UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RONALD FUENTES-MAJANO | ) | |
| | ) | |
| v. | ) | No. 3:12-1005 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM AND ORDER

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (Docket No. 1), as well as briefs and exhibits filed in support of the Motion (Docket Nos. 27, 42), by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Government has filed briefs in response (Docket Nos. 23, 25, 31, 43) to the Motion.

For the reasons set forth herein, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

Also pending before the Court is the Petitioner's Motion For Expansion Of The Record And For An Evidentiary Hearing In Movant's Proceedings Under 28 U.S.C. § 2255 (Docket No. 44). The Motion is GRANTED in part and DENIED in part. The Court grants Petitioner's request to expand the record to include the affidavit of trial counsel, Hugh Mundy, but denies Petitioner's request for an evidentiary hearing for the reasons set forth herein.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with participating in a Racketeer Influenced Corrupt Organization ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering activity, in violation of 18 U.S.C. §

1959(a)(1) (Count Two); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Fifteen). (Third Superseding Indictment (Docket No. 770 in Case No. 3:07-00005)). Named as Co-Defendants in the case were Oscar Serrano, Escolastico Serrano, Omar Gomez, David Gonzalez, Ernesto Mendez-Tovar, Francisco Mendez, Walter Hernandez, Henry Garballo-Vasquez, Eliseo Iglesias, Ericka Cortez, Geovanni Pena, Jose Alfaro, and Manuel Marquez. (Indictment (Docket No. 3 in Case No. 3:07-00005)).

Petitioner pled guilty to Count One pursuant to a Plea Agreement, based in part on Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which the parties agreed to an advisory sentencing guideline range of 360 months to life. (Docket Nos. 878, 881, 884 in Case No. 3:07-00005). At the subsequent sentencing hearing, the Court sentenced the Petitioner to life imprisonment. (Docket Nos. 933, 934, 936, 937 in Case No. 3:07-00005).

Petitioner appealed the conviction and sentence to the Sixth Circuit, and the appeals court affirmed. (Docket Nos. 1053, 1055 in Case No. 3:07-00005). The Petitioner then filed a petition for writ of certiorari in the United States Supreme Court, which was subsequently denied. (Docket Nos 1056, 1057 in Case No. 3:07-00005).

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated on the following grounds: (1) Petitioner received the ineffective assistance of counsel; and (2) the Government engaged in prosecutorial misconduct by breaching the Plea Agreement.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Amr v. United States, 280 F. App'x 480, 485, 2008 WL 2246367 (6th Cir. June 2, 2008); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Blanton v. United States,

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

94 F.3d 227, 235 (6th Cir. 1996).

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, transcripts, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. <u>Ineffective Assistance of Counsel</u>

Petitioner argues that he received the ineffective assistance of trial counsel in the underlying criminal proceeding. In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1403 (2011); <u>Campbell v. United States</u>, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Strickland</u>, 104 S.Ct. at 2052; <u>Ludwig v. United States</u>, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>, at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 47 U.S. 52, 106 S.Ct.

4

366, 369-70, 88 L.Ed.2d 203 (1985); Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed. 2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

Petitioner claims that prior to his change of plea hearing, in an effort to persuade him to accept the proposed plea agreement, trial counsel, Isaiah Gant and Hugh Mundy, assured him he would receive no more than 30 years, and went to his parents' home and asked them to persuade him to accept. Petitioner claims he agreed to accept the proposed plea agreement with the understanding that he would receive no more than 30 years. Petitioner has submitted his own affidavit, as well as affidavits of Iris Najera, the Petitioner's girlfriend; Lucio Fuentes, the Petitioner's father; and Maria Majano, the Petitioner's mother. (Docket No. 27-1). In his affidavit, the Petitioner claims that he was told he would receive no more than 300 months. (Docket No. 27-1, at 4). The other affidavits filed by the Petitioner recite similar facts.

Petitioner's claims are belied by the record of the underlying criminal proceeding, which indicates that any issues regarding the Petitioner's understanding of the Plea Agreement or his decision to enter into it intelligently and voluntarily were addressed at length by the Court at the change of plea hearing.

At the outset of the hearing, the Court explained to the Petitioner, through an interpreter, that he was answering questions under oath, and that he could be prosecuted for perjury or false statement for failing to tell the truth. (Transcript of Change of Plea Hearing, at 4-5 (Docket No. 1037 in Case No. 3:07-00005)). The Court inquired of counsel as to how the Plea Agreement was explained to the Petitioner, and counsel stated:

5

> MR. GANT: Yes, Your Honor. A Spanish version of what Your Honor has before you was read to Mr. Fuentes yesterday as well as today. In fact, he was furnished a copy as the Court recessed earlier. He took it to the lockup and has had additional time to review it.

(Id., at 5).

The Court then summarized the elements of the offense to which the Petitioner was offering to plead guilty, and asked the Petitioner if he understood the nature, meaning and cause of the charge, to which the Petitioner answered: "Your Honor, I understand it perfectly." (Id., at 5-9). The Court then asked the Petitioner if he had talked to his attorneys about the charge and the facts upon which the charge was based. (Id., at 9). The Petitioner answered: "We have done that more than once." (Id.) The Court asked the Petitioner if he had talked with his lawyers about what the Government would have to prove in order for him to be found guilty. (Id.) The Petitioner answered: "Your Honor, we have done that in great detail." (Id.) The Court then asked the Petitioner if he was satisfied with his lawyers, and the Petitioner responded: "I have always been satisfied with them, and up until now I am perfectly satisfied, Your Honor." (Id.)

The Court then advised the Petitioner as to the maximum possible penalty for the charge to which he was pleading – life imprisonment, five years of supervised release, fines and a special assessment. (Id., at 10). The Petitioner answered that he understood those penalties "[p]erfectly." (Id.) The Court then explained supervised release, restitution, loss of voting rights, and sentencing procedures. (Id., at 10-11). The Court specifically explained that through the Plea Agreement, the parties had agreed to a sentencing guideline range of 360 months to life, to which the Petitioner responded: "I am very sure that I have understood it all, Your Honor." (Id., at 12). When the Court explained that the Petitioner would not be able to withdraw his guilty plea if he were later disappointed with the sentence, the Petitioner stated: "I understand it exactly

6

like that, Your Honor." (Id., at 12). The Court then explained to the Petitioner that his guilty plea could result in eventual deportation, and revocation of probation, parole or supervised release. (Id.)

The Court then explained the Petitioner's rights, and the rights he would be waiving by pleading guilty, to which the Petitioner stated that he understood "[e]xactly." (Id., at 13). The Court then went through the Plea Agreement, paragraph by paragraph. (Id., at 14-19). In explaining the provisions of the Plea Agreement, the Court again advised the Petitioner that he would be agreeing to a guideline sentencing range of 360 months to life. (Id., at 16). Along the way, the Court asked the Petitioner if he had any questions, and the Petitioner responded: "No, Your Honor, because my lawyer had previously explained to me perfectly everything that I need to know." (Id., at 17). After reviewing every provision of the Plea Agreement, the Court asked the Petitioner the following questions:

> Mr. Fuentes, do you feel like you understand your plea agreement?
>
> A. I am sure I do, Your Honor.
>
> Q. Has anybody in any way forced you to plead guilty or threatened you to make you plead guilty?
>
> A. At no moment, Your Honor.
>
> Q. Has anybody offered you anything of benefit other than what's in the plea agreement to entice you or encourage you to plead guilty?
>
> A. No, no one has done that, Your Honor.
>
> Q. Have you had any kind of drugs or alcohol in the last 12 hours?
>
> A. No, Your Honor.
>
> Q. Are you taking any prescription medications?

7

> A. Your Honor, I am in perfect health.
>
> Q. Is your mind clear?
>
> A. Very clear, Your Honor.
>
> Q. Do you know what you are doing?
>
> A. Exactly, Your Honor.
>
> Q. Are you having any trouble understanding me through your court interpreter?
>
> A. None, Your Honor.

(Id., at 18-19).

The Court then called on the Government to establish a factual basis for the plea, and the Government called ATF Special Agent Mickey Welch to recite the facts underlying the guilty plea. (Id., at 20-25). After the witness testified, the Court recalled the Petitioner and counsel to the podium, and asked:

> Mr. Fuentes, did you hear Agent Welch testify?
>
> THE DEFENDANT: I heard it in Spanish, Your Honor.
>
> THE COURT: Was his testimony about you correct?
>
> THE DEFENDANT: It is true, Your Honor.
>
> THE COURT: Are you offering to plead guilty to Count One of the third superseding indictment because you are in fact guilty as charged in Count One of the third superseding indictment?
>
> THE DEFENDANT: Yes, Your Honor.

(Id., at 26). The Court then determined that Mr. Fuentes' guilty plea was entered knowingly, intelligently, and voluntarily. (Id., at 26-27).

At no time during the change of plea hearing did the Petitioner indicate that counsel had

promised him a maximum sentence of 30 years. Even if the Court assumes that trial counsel made such a statement, or that Petitioner misunderstood counsel's explanation of the sentencing range in the proposed plea agreement, the Court corrected any confusion by going over the applicable sentencing range at the change of plea hearing. The Court clearly explained to the Petitioner, more than once, that 30 years was the bottom of the sentencing range in the Plea Agreement, and a life sentence was the top of the range. Each time, the Petitioner indicated he understood. Indeed, Petitioner stated that he understood "[p]erfectly." The Petitioner did not ask the Court any questions about that sentencing range, nor did he complain about trial counsel. Rather, he indicated that trial counsel was doing "a very good job." Petitioner also failed to raise any concerns about the agreed sentencing range at the sentencing hearing. (Docket No. 982 in Case No. 3:07-00005). Accordingly, Petitioner has not demonstrated prejudice from any alleged failure of counsel to explain the agreed sentencing range set forth in the Plea Agreement, and his ineffective assistance of counsel claim on that issue is without merit.

Petitioner also claims that, upon learning of two surprise witnesses at the sentencing hearing, who testified that Petitioner attempted to have other witnesses killed, trial counsel should have objected, requested a continuance, or requested to withdraw from the Plea Agreement.

Petitioner made a similar argument on direct appeal, and that argument was rejected by the appeals court. In reaching its decision, the Sixth Circuit pointed out that even if it assumed that withholding notice of the testimony of the two witnesses constituted a breach of the Plea Agreement, the Petitioner had not shown prejudice as a result:

> Fuentes first asserts that without Gomez's and Mendez's 'outcome determinative' testimony, the district court would have sentenced him to less than

9

life imprisonment. But this alleged prejudice (the district court's reliance on Gomez's and Mendez's testimony) is unrelated to the complained-of breach: Fuentes complains of the lack of notice – that the plea agreement required the government to disclose Gomez's and Mendez's testimony *sooner*, not that the agreement prohibited the government from introducing this damning testimony at all.

Second, Fuentes contends that he would have rejected the plea agreement if the government had revealed the substance of Gomez's and Mendez's testimony before the plea hearing. But this supposed prejudice involves Fuentes's plea – not his sentence. And it is his sentence – not his plea – that Fuentes must show to have been affected. *See id.* (noting that when the government breaches a plea agreement 'the question with regard to prejudice is not whether [the defendant] would have entered the plea had he known about the future violation').

Third, Fuentes maintains that earlier disclosure of the testimony – before either the plea hearing or the sentencing hearing – would have caused the district court to recognize its significance to his guidelines range and reject the plea agreement. This alleged prejudice rests on Fuentes's erroneous assumption that the district court, '[b]y making the factual finding that Fuentes had taken post-arrest steps to have cooperating witnesses killed,' triggered an obstruction-of-justice enhancement, thereby elevating Fuentes's guidelines range to strictly life. Yet, the district court did no such thing. Instead, the court (1) repeatedly stated that it was accepting Fuentes's plea agreement with its advisory guidelines range of 360 months to life; (2) repeatedly noted that its only remaining task was to consider evidence relevant to the discretionary § 3553(a) factors; (3) evaluated all the evidence, including Gomez's and Mendez's testimony, under those factors; and (4) sentenced Fuentes to life – the high end of his guidelines range – because Fuentes's threats evidenced a lack of remorse, future dangerousness, and a need to protect the public. In short, the district court neither found that Fuentes obstructed justice nor enhanced his guidelines range.

Fourth, and finally, Fuentes contends that the breach hamstrung his defense at sentencing: it deprived him of 'a fair opportunity to prepare to cross-examine Mendez and Gomez,' and, given such an opportunity, he 'may have been able to effectively counter their ... testimony.' Fuentes specifies nothing further, however, such as the witnesses he would have called, the substance of their testimony, or how he would have attacked Gomez's and Mendez's credibility. *See Olano*, 507 U.S. at 735, 113 S.Ct. 1770 (noting that the plain-error standard normally requires 'a specific showing of prejudice'). His imprecise assertions of prejudice thus fail to hurdle the plain-error bar. *See, e.g., United States v. Miller*, 531 F.3d 340, 347 (6th Cir.2008) (finding no prejudice where defendant made 'little effort on appeal to explain how he was prejudicedl). And rather than move for a continuance at any point during the two-day sentencing hearing, Fuentes

10

> chose to cross-examine the government's witnesses. *See United States v. Matos*, 328 F.3d 34, 43 (1st Cir.2003) (finding no prejudice where defendant failed to seek a continuance and vigorously cross-examined the witnesses).
>
> Because Fuentes has failed to establish an effect on his substantial rights, the plain-error standard precludes reversal.

United States v. Fuentes-Majano, 407 F. App'x 900, 903-04, 2011 WL 294083 (6th Cir. 2011).

To support his current argument that trial counsel was ineffective at sentencing, Petitioner has filed the affidavit of one of his trial attorneys, Hugh Mundy, in which he states that:

> In light of the above-described terms of Fuentes' plea agreement, the Government's intentional withholding of evidence relating to Fuentes' alleged threats to cooperators, and the Court's reliance on the same evidence to sentence Fuentes to life imprisonment, I believe that my failure to object to the Government's breach of the plea agreement fell below the standards of competency and effectiveness demanded of criminal defense practitioners in the Middle District of Tennessee and elsewhere.

(Docket No. 44).

Even if the Court assumes that trial counsel were ineffective for failing to object to the alleged breach of the Plea Agreement, or for failing to request a continuance of the sentencing hearing, however, neither the Petitioner nor Mr. Mundy have articulated any prejudice that Petitioner suffered as a result. First, Petitioner has not established that trial counsel would have likely succeeded in convincing the Court that the Government's failure to disclose the threat evidence constituted a breach of the Plea Agreement. In presenting the evidence, the Government did not seek to enhance the sentencing range agreed to by the parties. Rather, the Government sought to persuade the Court to sentence the Petitioner at the top of the agreed range. Consequently, the Court is unlikely to have found a breach of the Plea Agreement. At most, the Court would have ordered a continuance of the sentencing hearing to allow trial

counsel additional time to prepare to counter the Government's witnesses.

Petitioner has also failed to articulate any evidence or impeachment material that trial counsel could have discovered during such a continuance. He has not identified any witnesses he would have called nor has he identified any areas of impeachment that would have been discovered during a continuance.

Accordingly, Petitioner's ineffective assistance of counsel claim regarding the evidence presented at the sentencing hearing is without merit.

D.  Prosecutorial Misconduct

Petitioner also argues that the Government engaged in prosecutorial misconduct by breaching the Plea Agreement, which Petitioner contends, prohibited the Government from presenting "additional" evidence at the sentencing hearing.  As discussed above, however, Petitioner has not established that the Government's conduct constituted a breach of the Plea Agreement.  Petitioner has not cited any section of the Plea Agreement, or legal authority, prohibiting the Government from presenting witnesses at sentencing without prior notice to the Petitioner.  The Government presented the witnesses in support of its argument that the Court should sentence the Petitioner at the top of the sentencing range agreed to by the parties in the Plea Agreement. Accordingly, Petitioner's prosecutorial misconduct claim is without merit.

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order,

such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

    It is so ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE